**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

HERNAN JULIAN GARCIA DIAZ,

Petitioner,

v.

JOHN MATTOS, *et al.*,

Respondents.

Case No. 2:26-cv-00926-RFB-BNW

**ORDER ENFORCING (ECF NO. 13) WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Hernan Julian Garcia Diaz's (ECF No. 15) Motion to Enforce this Court's (ECF No. 13) Order Granting Petitioner a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The Court previously ordered Petitioner's immediate release from detention via (ECF Nos. 16, 23) Minute Order. This written order setting forth the Court's reasoning for granting Petitioner's (ECF No. 15) Motion to Enforce follows.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On April 8, 2026, Petitioner filed an Amended Petition for Writ of Habeas Corpus. See ECF No. 6 ("Petition"). He challenged the lawfulness of his detention in the custody of Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. § 1225(b)(2)(A) as unlawful under the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. See id. at 5–10. He requested that he be released from detention or promptly provided a constitutionally adequate bond hearing in immigration court with the burden on the government to justify detention by clear and convincing evidence. Id. at 11.

The verified Petition described Petitioner's guilty plea to the gross misdemeanor of "conspiracy to commit a crime" on February 10, 2026, which included "a stipulated sentence of

one year of probation and a nine-month suspended sentence." See id. at 4. The Petition also stated Petitioner had sent two letters requesting bond, but to date, no bond hearing had been scheduled, and he remained in detention. See id.

Upon reviewing the Petition, the Court preliminarily found that Petitioner could likely demonstrate that he is a member of the certified class in Jacobo-Ramirez v. Mullin, No. 25-cv-02136-RFB-MDC (D. Nev.) and entitled to relief pursuant to the Court's classwide declaratory judgment and vacatur. See Jacobo Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 LX 175584 (D. Nev. Mar. 30, 2026). See ECF No. 8. Pursuant to 28 U.S.C. § 2243, the Court thus ordered Respondents to show cause why Petitioner is not a Class Member and why the Writ should not be granted by filing "a return *certifying* the true cause of detention" on or before April 13, 2026. See id. (emphasis added).

On April 9, 2026, the day after the Petition was filed, the Las Vegas Immigration Court held a custody redetermination hearing (*i.e.* bond hearing) for Petitioner. See ECF No. 17-1 ("Order of the Immigration Judge (IJ)"); see also ECF No. 22 (audio recording of April 9, 2026 bond hearing) ("Recording"). Petitioner appeared at the hearing without counsel, from Nevada Southern Detention Center. Recording at 00:15-20, ECF No. 22. The Immigration Judge ("IJ") accepted evidence from Petitioner regarding his decades of residence in the United States, his fixed address, steady employment, and deep family ties in the country—including the fact that his parents, siblings, aunts, cousins, in-laws, six-year-old son  (for whom he is the sole physical and legal custodian), and "pretty much [his] entire family" lives in Las Vegas. Recording at 3:00-3:57.

The evidence submitted by the government was a "Form I-213 Record of Deportable/Inadmissible Alien," ("I-213") see id. at 3:57-5:00, which is a "document, prepared by an officer of the Department of Homeland Security (DHS), [that] sets out basic biographical information about an alien as well as the date and place of his entry into the United States and a narrative that includes facts establishing his removability." Hernandez v. Garland, 52 F.4th 757, 766 (9th Cir. 2022). The IJ questioned Petitioner under oath about the status of a criminal charge for possession of a stolen vehicle that was described in the I-213. See Recording at 5:37-6:34. Petitioner explained the charge resulted in his plea to conspiracy to possess a stolen vehicle, a

gross misdemeanor. Id. He also described his sentence, and his plan to report to probation immediately upon release if granted bond. Id. The IJ asked the government whether "a gross misdemeanor for conspiracy" meant he was "still subject to mandatory detention under Laken Riley." Id. at 7:00-7:11. It is not clear from the Recording or the record before this Court whether or when the government asserted before the Immigration Court that the Laken Riley Act ("LRA") applied to Petitioner's conviction. After "double checking the wording of [8 U.S.C. § 1226(c)] as it stands now," the government "argued that based on the information provided in the record of conviction it does constitute the essential elements of a theft offense as required under § 1226(c)(1)(E)(ii)." Id. at 7:11-8:20. The IJ then informed Petitioner that the LRA meant that anyone who "admits committing acts which constitute the essential elements of a theft offense . . . or larceny" is subject to mandatory detention, and since Petitioner "pled guilty to conspiracy but the conspiracy was to possess a stolen vehicle which is a larceny offense" he had to "deny [Petitioner's] request for a bond." Id. at 8:47-10:41.

The IJ's written order denying bond stated:

> This court is required to find jurisdiction pursuant the March 30, 2026, United States District Court for the District of Nevada ruling entering an "ORDER GRANTING PARTIAL SUMMARY JUDGMENT". Therein, the Court held that a Class Member must receive a bond hearing in front of an Immigration Judge if they request one. Jacobo-Ramirez v. Noem, No. 25-cv-02136 (Nev. 2025).

> The Certified Class is defined as follows: All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will begin removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) *who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c)*, 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE. *Respondent appears to be a Class Member.* As such, *the Court has jurisdiction to consider the respondent's request for release from custody. The Court considered dangerousness and flight risk.*

See Order of the IJ, ECF No. 17-1 at 2 (emphasis added). The IJ's written Order also stated Petitioner's request for a change in custody status was "denied, because [m]andatory custody under the Laken-Riley Act. Public Law 119-1, January 29, 2025" meaning Petitioner is now allegedly being detained under 8 U.S.C. § 1226(c), contrary to the IJ's written finding that Petitioner is a Class Member. Id. The Order did not address the IJ's irreconcilable findings that Petitioner is a

Jacobo-Ramirez Class Member (*i.e.*, he is "not or will not be subject to detention under § 1226(c)") and the finding that the LRA applies to him (*i.e.,* he is subject to detention under § 1226(c)). See id.

The Court was first notified of the above-described bond hearing four days after it had already granted the Petition and entered judgment. See ECF No. 17 (Delayed Status Report by Federal Respondents notifying the Court of the April 9, 2026 bond hearing for the first time). Three days after the bond hearing occurred, on April 13, 2026, Federal Respondents filed their response to this Court's Order to Show Cause and the Petition. See ECF No. 10 ("Return"). In it, Federal Respondents stated, "Petitioner is a Class Member." Id. at 1. The only statutory authority cited for Petitioner's detention was 8 U.S.C. § 1225(b)(2)(A). Id. at 1–2. Federal Respondents "incorporated their prior litigated positions regarding 8 U.S.C. § 1225(b)(2)(A)" and "reserved their right to appeal the decisions in Jacobo-Ramirez and this matter." Id. Federal Respondents made no reference to § 1226(c) or the LRA. See id. They also attached documents from Petitioner's criminal case, including his plea agreement for conspiracy to commit a crime, Gross Misdemeanor, N.R.S. 199.480 – N.O.C. 55982: possession of a stolen vehicle. See Return, Ex. A, ECF No. 10-1. Nothing in the Return or attached documents relevant to Petitioner's detention and immigration proceedings referenced the April 9, 2026 bond hearing or § 1226(c). See generally id.

On April 16, 2026, Petitioner filed his Traverse, which stated that the parties agree that Petitioner is a Jacobo-Ramirez Class Member, and "there is no dispute that [Petitioner] may only be detained pursuant to 8 U.S.C. § 1226(a)." See ECF No. 12 ("Traverse"). The Traverse further noted that Federal Respondents offered no dispute that Petitioner was detained by ICE "without an administrative warrant, and without an individualized custody assessment, both of which are required for a proper arrest under 8 U.S.C. § 1226" such that release was the appropriate remedy for his unlawful detention. See id. at 1–2 (citing Rodrigue Akameyong Djiwaje v. Bondi, No. 2:26-CV-00344-RFB-MDC, 2026 WL 926753, at *3 (D. Nev. Apr. 6, 2026) ("issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)")).

On April 20, 2026, the Court issued its Order and Judgment granting Petitioner a Writ of Habeas Corpus. See ECF No. 13. In its ruling, the Court relied upon the parties "undisputed factual

- 4 -

allegations, and the evidence they supply" to find that Petitioner is a Class Member, including the fact that "the government is not asserting that Petitioner is subject to detention under §§ 1226(c), 1225(b)(1), or 1231." Id. at 2–3 (citations omitted). The Court further found that Petitioner's detention violated his procedural and substantive due process rights. See id. at 3–4. The Court found that the appropriate remedy to ensure that Federal Respondents "abide by due process moving forward" was a bond hearing "under § 1226(a), and its implementing regulations, wherein the government must prove, by clear and convincing evidence, that Petitioner's civil detention is justified by an individualized, constitutionally recognized interest—e.g., that his detention is necessary to prevent danger to the community or to ensure his future appearance at removal proceedings." Id. at 5. The Court further ordered that the constitutionally adequate bond hearing must occur by April 21, 2026, or "Respondents must immediately release Petitioner from custody on his own recognizance with no substantial constraints on his liberty." Id.

The Court also ordered the parties to file a "joint status report by April 22, 2026" detailing "whether the bond hearing occurred, whether bond was granted or denied, and, if denied, the reasons for that denial." See id. at 7. The Court further retained jurisdiction to enforce its order and judgment. Id.

On April 22, 2026, Petitioner filed the instant Motion to Enforce, which stated that Petitioner had not received a constitutionally adequate bond hearing by April 21, 2026, yet he remained in detention, in violation of the Court's Order granting the Petition. See generally, ECF No. 15. Petitioner's counsel notified Federal Respondents that Petitioner had not received a compliant bond hearing by April 21, 2026 around 5 p.m. that day. See id. Petitioner's counsel received a response from Assistant U.S. Attorney (AUSA) Tamer Botros at 10:55 p.m. stating that he was seeking additional information from the agency. See ECF No. 16. After receiving no further response, Petitioner filed the instant Motion to Enforce on April 22, 2026, seeking Petitioner's immediate release from custody. See ECF No. 15.

Federal Respondents failed to comply with this Court's Order by filing a status report by April 22, 2026. Accordingly, on the evening of April 23, 2026, the Court issued a Minute Order finding Federal Respondents were in violation of this Court's Orders due to their failure to file a

timely status report and apparent failure to provide Petitioner with a constitutionally adequate bond hearing by April 21, 2026 or release him. See ECF No. 16. The Court ordered that Petitioner be immediately released from custody by no later than April 24, 2026 at 2:00 p.m. See id.

The morning of April 24, 2026, Federal Respondents filed a status report which stated, for the first time, that "a bond hearing was conducted regarding Petitioner on April 9, 2026 . . . [r]elease was denied because mandatory custody of the Petitioner is required under the Laken Riley Act . . . [t]he IJ considered dangerousness and flight risk." See ECF No. 17. Federal Respondents represented that "[t]he bond hearing that was conducted on April 9, 2026 regarding Petitioner complied" with this Court's Order. See id. at 1–2. However, as described above, a review of the recording of the April 9th bond hearing reveals that the IJ did not consider dangerousness or flight risk—or whether the government had met their burden of establishing dangerousness or flight risk by clear and convincing evidence—contrary to the Federal Respondents' representation to this Court (and the IJ's representation in his written order denying bond) that those factors were considered. See generally Recording, ECF No. 22. In fact, the government submitted no evidence and made no argument at the hearing that Petitioner was dangerous or a flight risk, and the IJ declined to make any individualized findings as to Petitioner. See id. The IJ denied bond solely on the basis that he was categorically ineligible under the LRA. Id.

Based on the representations in Federal Respondents' Status Report, see ECF No. 17, and the attached April 9, 2026 Order by the IJ denying Petitioner bond, see id., Ex. A, ECF No. 17-1, the Court stayed its Order requiring Petitioner's release by April 24, 2026, and set an expedited briefing schedule on Petitioner's Motion to Enforce. See ECF No 18. On April 27, 2026, Federal Respondents filed their Opposition, which argued the Motion should be denied because "Petitioner did in fact receive a bond hearing on April 9, 2026 pursuant to the Jacobo-Ramirez decision" and claimed that that hearing complied with this Court's Order granting the Petition. Federal Respondents' Opposition to Motion to Enforce ("Opposition"), ECF No. 19 at 1–2. On April 29, 2026, Petitioner filed his Reply and submitted the recording of the April 9, 2026 bond hearing. See ECF Nos. 21–22.

Petitioner argues Federal Respondents failed to comply with this Court's Order granting

the Petition, because (1) their concession that Petitioner is a Jacobo-Ramirez Class Member was a binding admission that Petitioner cannot be subject to § 1226(c) and a waiver of any claim that the LRA applies to Petitioner; and (2) the April 9 bond hearing erroneously applied the LRA, and was not constitutionally adequate, as Federal Respondents did not argue, let alone prove by clear and convincing evidence, that Petitioner is a danger to the community or unlikely to appear at future hearings in removal proceedings. See Petitioner's Reply, ECF No. 21. The Reply reiterated that Petitioner must be immediately released from custody. See id. As discussed below, the Court agrees with Petitioner on all counts, grants the Motion, and orders Petitioner's immediate without conditions.

## II.    DISCUSSION

This Court has "inherent authority" "to enforce its orders by whatever means[.]". Cahill v. Insider Inc., 131 F.4th 933, 938 (9th Cir. 2025) (quoting Perry v. O'Donnell, 759 F.2d 702, 705 (9th Cir. 1985). See also Fed. R. Civ. P. 70. For the following reasons, the Court finds that Petitioner is being detained in violation of the habeas relief this Court granted Petitioner on April 20, 2026, and orders his immediate release.

First, the Court finds the government has waived any argument that § 1226(c) applies to Petitioner. In response to the Court's Order that Respondents *certify* the true cause of Petitioner's detention pursuant to 28 U.S.C. § 2243, they asserted that Petitioner is a Class Member, meaning (by definition) he is not, nor will be, detained under § 1226(c). At the time they filed the Return, Federal Respondents were aware of Petitioner's criminal conviction as detailed in the Petition, and in the documents attached to their Return. The time to argue that Petitioner's criminal conviction rendered him subject to detention under § 1226(c) was in their response to this Court's Order that they show cause "why Petitioner is not a Class Member" and "certify[ ] the true cause of his detention." See April 9, 2026 Order to Show Cause, ECF No. 8. Even though a bond hearing had already occurred wherein ICE asserted Petitioner is subject to mandatory detention pursuant to § 1226(c), Federal Respondents made no such argument in their April 13, 2026 Return, and omitted the fact of the April 9, 2026 bond hearing entirely. See Return, ECF No. 11.

Only after this Court granted the Petition and entered judgment on April 20, 2026—in reliance on Federal Respondents' concession that § 1226(c) does not apply to Petitioner—did Federal Respondents inform this Court and counsel for Petitioner of the April 9th bond hearing wherein they argued, and the IJ found, that § 1226(c) *does* apply to Petitioner. Federal Respondents now claim that the April 9th hearing, wherein Petitioner was categorically denied bond under § 1226(c), was a constitutionally adequate bond hearing under § 1226(a) in compliance with this Court's mandate and the classwide relief in Jacobo-Ramirez. See Opposition, ECF No. 19.

This Court "must protect the integrity of the judicial process by prohibiting" the government "from deliberately changing positions according to the exigencies of the moment." United States v. Paulson, 68 F.4th 528, 547 (9th Cir. 2023) (citing New Hampshire v. Maine, 532 U.S. 742, 750 (2001)). Given the government's waiver of their argument that § 1226(c) applies to Petitioner in their Return to this Court's Order to Show Cause, and the inconsistencies in their binding representations to this Court throughout this case, Federal Respondents are equitably estopped from arguing that § 1226(c) applies to Petitioner. See id.

This Court need not reach the issue of whether § 1226(c)(E)(1)(ii) (8 U.S.C. § 1226(c) as amended by the Laken Riley Act) applies to Petitioner due to the government's waiver. See, e.g., United States v. Orozco, F.3d 1204, 1210 (9th Cir. 2017) (explaining that the court need not address an argument "because the U.S. Attorney waived this argument by failing to address it in his answering brief"); United States v. Dreyer, 804 F.3d 1266, 1277 (9th Cir. 2015) (*en banc*); see also, Rodriguez v. Mullin, No. 2:26-CV-00531-APG-NJK, 2026 WL 895685, at *4 (D. Nev. Apr. 1, 2026) (finding the government waived a defense to a habeas petitioner's as applied constitutional challenge to his detention under § 1226(c), and that his detention under that provision would violate his due process rights). Nevertheless, the Court finds the LRA likely does not apply to Petitioner. To determine whether mandatory detention under 8 U.S.C. § 1226(c)(1)(E) is triggered by a criminal offense, the statute states the terms "have the meanings given . . . in the jurisdiction in which the acts occurred." 8 U.S.C. § 1226(c)(2). At the April 9th hearing, ICE argued, and the IJ found (without discussion) that Petitioner's conviction for the gross misdemeanor of conspiracy to possess a stolen vehicle constituted a conviction for "acts which

constitute the essential elements" of either theft (as the government argued) or larceny (as the IJ ultimately found even though the government did not make that argument). See generally, Recording, ECF No. 22. But in Nevada, the commission of *conspiracy* to commit a crime includes no requirement that a defendant commit an overt act in furtherance of the crime. See N.R.S. § 199.490; see also Villavicencio v. Sessions, 904 F.3d 658, 665 (9th Cir. 2018) (finding Nevada's conspiracy statute, N.R.S. § 199.490, categorically "lacks the requisite 'overt act' element" and cannot be used to support removal of a noncitizen under the INA). So even if the Court were to allow the government to argue—for the first time post-judgment and in direct contradiction to their previous binding representations to this Court—that § 1226(c)(E)(1)(ii) applies to Petitioner, they have failed to provide sufficient authority to support that argument, and the Court finds the statutory text indicates that N.R.S. § 199.490 is not a qualifying offense to trigger mandatory detention under that provision. Cf. Loper Bright Enters. v. Raimondo, 603 U.S. 369, 400–01 (2024) ("[A]gencies have no special competence in resolving statutory ambiguities. Courts do.")

Further, the Court finds that because ICE and DHS unlawfully arrested and detained Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A) and failed to follow regulatory procedures under 8 U.S.C. § 1226, their attempt to raise § 1226(c) *for the first time* at the April 9th bond hearing gave Petitioner no notice or opportunity to be heard regarding the applicability of § 1226(c)(E)(1)(ii) to his gross misdemeanor conspiracy conviction. Petitioner was therefore deprived of procedural protections he is entitled to under § 1226(c). See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (describing the availability of a "Joseph hearing" which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)" where "the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I.&N. Dec. 799 (BIA 1999)). For that reason, too, Federal Respondents are equitably estopped from retroactively applying § 1226(c) to Petitioner—without following the appropriate regulatory procedures in arresting and detaining him.

Finally, Federal Respondents' position that the April 9th hearing complied with this

Court's Order is obviously incorrect. The government did not present any evidence that Petitioner is dangerous or a flight risk, let alone "clear and convincing evidence" as required. See Order Granting Writ at 5, ECF No. 13. Again, ICE made no arguments, and the IJ made no findings regarding Petitioner's dangerousness or flight risk; instead the IJ found that he had to deny bond based on ICE's assertion that Petitioner is subject to mandatory detention pursuant to the LRA and thus ineligible for any individualized determination of dangerousness or flight risk. Compare Federal Respondents' Status Report at 1, ECF No. 17 ("The IJ considered dangerousness and flight risk . . . "[t]he bond hearing that was conducted on April 9 2026 regarding Petitioner complied with the Court Order. Federal Respondents advise the Court that Federal Respondents complied with the Court Order (ECF No. 13)") with Recording, ECF No. 22.

In sum, Petitioner remains detained in violation of this Court's Order that he be provided a prompt, constitutionally adequate bond hearing or released "on his own recognizance with no substantial constraints on his liberty." See Order Granting Writ at 6, ECF No. 6. This Court is duty bound to ensure "the writ" remains "a swift and imperative remedy in all cases of illegal restraint or confinement." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000). The Court must therefore prevent ICE from taking one position in these federal habeas proceedings, while taking a fundamentally inconsistent position in immigration court proceedings. To allow otherwise would render the writ and the classwide relief this Court ordered in Jacobo-Ramirez ineffectual, waste the Court's finite time and resources, further exacerbate the constitutional injuries and indignities suffered by detained noncitizens like Petitioner and their families, and ratify Federal Respondents' unlawful conduct.

Unfortunately, this case is part of an emerging pattern of Federal Respondents "repeatedly—and increasingly—violating this Court's orders" and thereby "undermining their credibility and the rule of law" and causing "unnecessary trauma and harm to petitioners." Melendez Paz v. Mullin, 2:26-cv-00296-RFB-MDC, ECF No. 20 at 10–11 (May 1, 2026) (citations omitted) (collecting examples). In this case, that includes trauma to Petitioner's U.S. citizen "six-year-old son who believed his father would be getting released and is desperate to reunite with him." See ECF No. 15 at 4. Yet again this Court must reiterate that "this is not what

civil enforcement looks like in a humane system of government under law." Solis v. Noem, No. 2:26-CV-00053-RFB-EJY, 2026 WL 776981, at *1 (D. Nev. Mar. 19, 2026) (citing Aroca v. Mason, No. 2:26-CV-00057, —— F.Supp.3d ——, 2026 WL 357872, at *1 (S.D. W.Va. Feb. 9, 2026).

### III.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's (ECF No. 15) Motion to Enforce Order is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must **IMMEDIATELY RELEASE** Petitioner from detention **WITHOUT CONDITIONS.  All of Petitioner's personal property must be IMMEDIATELY RETURNED to him**.

**IT IS FURTHER ORDERED** that Respondents are **ENJOINED** from detaining or imposing release conditions on Petitioner during the pendency of his current removal proceedings unless and until it is determined that his detention is warranted under 8 U.S.C. § 1226(a) and its implementing regulations, after a constitutionally adequate *pre-deprivation* bond hearing, wherein the government bears the burden of demonstrating dangerousness or flight risk, or the reasonableness of any release conditions, by clear and convincing evidence. This means Respondents are **ESTOPPED** from detaining Petitioner pursuant to 8 U.S.C. § 1226(c) based on his existing gross misdemeanor conviction.

**IT IS FURTHER ORDERED** that Federal Respondents must file a **CERTIFICATE OF COMPLIANCE** with this Order by **May 11, 2026 at 3:00 p.m.**

**DATED:** May 9, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**